UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-475-RJC-DCK

| | |
|---|---|
| VERONIQUE K. PONGO, and<br>FRANCISCO AVOKI,<br><br>      Plaintiffs,<br><br>  vs.<br><br><br>QBE FIRST INSURANCE AGENCY,<br>INC., DOES I-XX,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    <u>**ORDER**</u><br>)<br>)<br>)<br>)<br>)<br>) |

**THESE MATTERS COME** before the Court on several motions by Plaintiffs, including: to amend their complaint (Doc. 8), to preserve evidence (Doc. 9), and to revoke the mediated settlement agreement between the parties. (Doc. 19). Of these motions, Defendants responded in opposition to the motion to amend the complaint and to revoke the mediated settlement. (Docs. 10; 20). Additionally, Defendants moved this Court for oral arguments on the issue of whether to enforce the settlement agreement. (Doc. 21).

These matters are ripe for review.

**I.    BACKGROUND**

Plaintiffs Avoki and Pongo purchased a multi home insurance policy from Defendant QBE Insurance to cover Plaintiffs' property (the Property) in Charlotte, North Carolina. (Doc. 1-1). The policy was issued on June 11, 2012. (<u>Id.</u>). At the time, Plaintiff Pongo was the owner of the Property with a mortgage held by Bank of America. (Doc. 20-1). Bank of America obtained a Lender Placed Policy (LPP) from Defendants QBE First for its interest in the Property. (<u>Id.</u>).

The LPP listed Bank of America as the "named insured mortgagee" and Pongo as "an additional named insured." (Id.).

In July 2013, Plaintiffs filed suit in North Carolina state court for breach of contract, unfair and deceptive trade practices, and bad faith. (Doc. 1-1). Defendants removed the case on August 21, 2013. (Doc. 1). On November 22, 2013, the case was reassigned to this Court. Prior to reassignment in this Court, Plaintiffs brought a motion to amend their complaint to add QBE Holding, Bank of America, Safeguard Properties and Town Realty for "violation of federal RICO act" and "tortious spoliation of evidence." (Doc. 9). Plaintiffs also moved this Court to issue an order enjoining Defendants from repairing or altering the property and requiring Defendants to preserve all relevant documents. (Doc. 10).

Foreclosure

During 2013, the Property went through foreclosure proceedings. Although unrelated to this lawsuit, the nature and degree of the parties' respective knowledge of the status of these proceedings relates directly to the issue of whether to recognize and enforce a settlement agreement. At some point, Bank of America sold its mortgage to the Bank of New York Mellon who initiated foreclosure proceedings in North Carolina State Court. On June 27, 2013, the Superior Court of Mecklenburg Country entered an order allowing Bank of New York Mellon to proceed with a foreclosure sale of the property. (Doc. 20-4 ¶1). On July 5, 2013, Plaintiffs filed a Notice of Appeal which was dismissed by the court on October 30, 2013. (Id. at 2-3).

Settlement Conference

The parties participated in a court ordered mediated settlement conference on December 18, 2013 where attorney W. Thad Adams, III served as mediator. The parties came to an

agreement at the conference whereby Defendants agreed to pay $21,500.00 directly to Mrs. Pongo. In addition, Defendants agreed to make a payment of $16,396.68 to Plaintiffs contingent upon repairs being done to the property. (Doc. 20-5 ¶6, 8). In the case that Plaintiffs were unable to make such repairs, the funds would be paid to the lender. (Id.).

Defendants also informed Plaintiffs that, pursuant to the LLP, they intended to make two claim payments to the lender totaling $27,179.14 and that these payments were independent of, and not affected by, the settlement negotiations. (Id. ¶¶4-5, 7, 9). The parties also discussed the foreclosure of the property during which the Plaintiffs expressed their intent to redeem the property. The mediator informed Plaintiffs that the settlement agreement in no way depended upon whether the foreclosure had or had not taken place. (Id. ¶ 14). Both parties signed the agreement which recited that it represented a full satisfaction of claims in this case. (Doc. 20-6). Under the agreement, the parties agreed to file a Stipulated Dismissal with Prejudice of all claims within fourteen (14) days of receipt of the check for $21,500 from Defendants to Ms. Pongo. (Id.).

On December 31, 2013, Counsel for the Defendants sent to Plaintiffs a draft final agreement entitled "Release of All Claims And Settlement Agreement" (Final settlement agreement). (Doc. 20-9 at 4-12). Included with the draft was a letter stating that Defendants would tender a check in the amount of $21,500 upon receipt of the singed final settlement agreement. Plaintiffs however, did not sign this agreement. (Id. at 2-3). In fact, five days earlier, on December 26, 2013, they filed a motion to revoke the settlement agreement under the grounds that the agreement was the product of a bilateral mistake. (Doc. 19).

## II. DISCUSSION

District courts have inherent authority, derived from their equity power, to enforce settlement agreements. Hensley v. Alcon Labs., 277 F.3d 535, 540 (4th Cir. 2002). In order to enforce such an agreement, the court must find that a complete settlement has been reached and be able to determine the terms and conditions of that settlement. Id. at 540-41. If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*. Id. at 541 (emphasis in original) (footnote omitted). Instead, the district court must hold a plenary evidentiary hearing to resolve the dispute. Id. (quoting Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981).

### A. Settlement Agreement

Plaintiffs argue that the agreement is void due to a mutual mistake of fact about whether Plaintiff, at the time of the agreement, possessed the legal right to redeem the Property and make repairs.[1] Were Plaintiff able to redeem such property and make repairs, she would be entitled to some or all of $16,396.68 under the agreement. Were Plaintiff not able to redeem the property (and therefore, not able to make repairs), she would have no right to the funds under the agreement.

#### 1. Whether Agreement Was Conditional

---

[1] Plaintiffs lodged a second objection which was not fully clear to the Court on its own terms. Specifically, Plaintiffs object that the agreement requires them to release any future claims against Defendants, including for gross negligence "that are unknown and have not yet arisen on September 18, 2013 . . . ." No such provision exists in either the December 18, 2013 agreement or the proposed Final Settlement and Release Form prepared by Defendants. Upon examination of the record, it appears to the Court that the Plaintiffs meant to refer to the December 18, 2013 agreement as they later refer to communications on September 19, 2013 whereby the Defendants sought to enforce the agreement despite the discover of "new evidence." This leads the Court to believe that Plaintiffs substituted "September" for "December."

4

The settlement conference took place in North Carolina whose general principles of contract law apply. Chappell v. Roth, 548 S.E.2d 499, 500 (N.C. 2001). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Northington v. Michelotti, 464 S.E.2d 711, 714 (N.C. Ct. App. 1995).

The Court first addresses whether the agreement between the parties was conditional upon Plaintiffs' ability to redeem the property and make repairs. Contracts that are contingent upon future events "amount[] to a collateral agreement postponing its legal operation until the happening of the contingency." Walter Pratt & Co. v. G.W. Chaffin & Co., 48 S.E. 768, 769 (N.C. 1904).

Defendant submitted an affidavit from the mediator, Mr. Adams, attesting that the parties did not make the agreement conditional upon the Plaintiffs ability to redeem the Property. "At no point during these conversations, did Plaintiffs tell me that the settlement of the case needed to be contingent on whether the property had already been sold to another buyer, whether they could negotiate with the Bank and/or "redeem" the Property." (Doc. 20-5 ¶13). Additionally, the mediator states that:

> I discussed with Plaintiffs that redemption of the Property might not be possible or the Bank might not agree to accept monies from Plaintiffs since the Property had been foreclosed upon. However, it was clear to me that Plaintiffs understood the settlement would not be voided if the Property had indeed sold to another buyer or their attempts to negotiate with the Bank were unsuccessful.

(Id. ¶14).

Finding that the agreement was not conditional, the relevant issue is whether the parties were mistaken about the legal status of the Property, and whether such mistake might justify the

5

avoidance of the contract.

## 2. Mistake of Fact

The determination of whether to avoid a contract on account of mistake involves a complex set of factors that resists easy formulation. "To formulate an accurate and practically applicable definition of the mistake of fact which will warrant rescission of a contract, has been apparently well nigh the despair of law writers." Note, *Rescission of a Contract for a Mutual Mistake of Fact*, 35 HARV. L. REV. 757 (1922).

A contract may be avoided due to a mistake of fact, "where a mistake is common to both parties and concerns a material past or presently existing fact, such that there is no meeting of the minds . . . ." Howell v. Waters, 347 S.E.2d 65, 69. (1986). For a term to be "material" it must be:

> [A]s to a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the *sine qua non*, or, as is sometimes said, the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties.

Id.

The analysis does not end there, however. Where a court finds an authentic mistake of fact, it must still inquire as to whether a risk of such mistake was contemplated by the parties and assumed by one of them. Thompson-Arthur Paving Co. v. Lincoln Battleground Assocs., Ltd., 382 S.E.2d 817, 822 (N.C. Ct. App. 1989). A party who assumes the risk of a mistaken fact cannot avoid a contract. Id. A party bears the risk of a mistaken fact when: (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the

6

grounds that it is reasonable to do so. Howell, 347 S.E.2d at 70.

Corralling the various elements into a workable framework yields the following: under North Carolina law, a court can avoid a contract for mistake of fact when: (1) at the time of the formation of the contract (2) both parties (3) were mistaken about (4) a then-existing or past fact, that is (5) material insofar as it is the efficient cause of the agreement such that it animates and controls the conduct of the parties. However, the court can decline to avoid the contract if any one of three factors are present: (1) the contract allocates the risk to one party; or, (2) the party is aware of its limited knowledge of the material fact but treats such knowledge as sufficient; or (3) the risk is allocated by the court and is reasonable to do so.

Before considering the various factors, the Court begins by examining the agreement at issue. A provision in the agreement signed by the parties on December 18th requires Defendants:

> to pay to the Order of Bank of America and Ms. Veronique K. Pongo, and to deliver to Bank of America, a check in the amount of $16,396.68, contingent on repairs to the residence that is the subject of this litigation having been satisfactorily completed;

(Doc. 20-6 cl. 1(b)).

Two days after this agreement was signed, Plaintiff Avoki sent an email to Defendants' counsel indicating that he "was hoping to start repairs" on the Property, but discovered that Plaintiffs would not be able to redeem the Property. (Doc. 20-8 at 2). Avoki stated in this email that he intended to nullify the settlement do to a mutual mistake of fact. In response, Defendants notified Plaintiffs that the matter had already settled. (Id.).

The Court finds a clear mistake of fact on the part of Plaintiffs. Although Plaintiffs had notice following the dismissal of their appeal in the North Carolina Court of Appeals on October

7

30, 2013, the actions of Plaintiffs demonstrate clearly that they labored under the mistaken belief that they would be able to redeem the property, enact the repairs, and obtain at least a portion of the $16,396.68. Their unwillingness to remain bound by the terms of the contract following discovery that they would not be entitled to the repair funds demonstrates that this provision – offering the prospect of payment of upwards of sixteen thousand dollars – animated and controlled their decision to enter into the agreement.

The more difficult inquiry is whether the Defendants were mistaken about the legal status of the Property at the time of the settlement conference. Defendants submitted an affidavit from the mediator, Mr. Adams, in which he stated that:

> Defendants explained that if the lender or Plaintiffs made repairs to the Property with the funds from the "claim payments," that an additional "hold back" amount would be available to be paid to the lender pursuant to the Policy. The "hold back" amount was $16,396.68, which Defendants agreed would be paid contingent upon repairs being made to the Property. I discussed aspect of the Defendants' proposal with the Plaintiffs, particularly the 'contingent' nature of this payment.

(Doc. 20-5 ¶8).

Additionally, Mr. Adams noted that:

> Defendants were skeptical that Plaintiffs still had the option to "redeem" the Property after a foreclosure sale had taken place. However, as insurers the foreclosure status of the Property was irrelevant to them. It was also irrelevant to Defendants whether Plaintiffs intended to use the settlement proceeds to negotiate a deal with the Bank or for any other purpose.

(Id. ¶11).

These statements clearly demonstrate that, although 'skeptical' that the Plaintiffs could redeem the property, the Defendants nonetheless did not possess certain knowledge that the Plaintiffs would not have the right to redeem the Property. Absent such uncertainty, there would

be no reason for Plaintiffs to include this provision in the contract – effectively dangling the prospect of a substantial payment contingent upon repairs that they knew could never be rendered. That the Defendants were uncertain about this fact, notwithstanding informing Plaintiffs of their skepticism regarding the Property, is the only viable explanation for including this provision in the agreement.

Accordingly, the Court finds that a bilateral mistake of fact existed as both parties were mistaken about the then-existing legal status of the house, and that this mistake is reflected in the provision of the agreement whereby Plaintiff might receive $16,396.68 for conducting repairs. Furthermore, the provision is material to the agreement: the sum of sixteen thousand dollars, if paid, represented a not-insignificant percentage of the total payments within the agreement, and clearly animated Plaintiffs to sign the agreement. Notwithstanding Defendants insistence that it was "irrelevant" to whom they paid the funds, the provision offered to them a much greater chance that Plaintiffs would agree to release them from liability from all claims related to the dispute.

   3.  Assumption of Risk

The affidavit of the mediator makes clear that "the Plaintiffs understood that the settlement would not be voided if the Property had indeed sold to another buyer or their attempts to negotiate with the Bank were unsuccessful." (Doc. 20-5 ¶14). Likewise, the language of the provision states that payments would be made to Plaintiffs "contingent upon repair to the residence that is the subject of litigation having been successfully completed." (Doc. 20-6). This language places the risk squarely on the Plaintiffs to complete such repairs or forgo payment.

Additionally, the Plaintiffs had received notice that their appeal had been denied by the

North Carolina Court of Appeals. Regardless of whether they understood the significance of such notice, it is clear that they understood that that there was at least a risk that they might not be able to redeem the Property because the mediator expressly informed them of it.

> I discussed with Plaintiffs that redemption of the Property might not be possible or the Bank might not agree to accept monies from Plaintiffs since the Property had been foreclosed upon. However, it was clear to me that the Plaintiffs understood that the settlement would not be voided if the Property had indeed sold to another buyer or their attempts to negotiate with the Bank were unsuccessful.

(Doc. 20-5 ¶14).

Accordingly, the Court finds that, although a material mistake of fact existed between the parties, the risk of such mistake was contemplated by the parties, communicated to the Plaintiffs by the mediator, and assumed by the Plaintiffs. For this reason, the Court declines to avoid the contract. Finding the agreement valid, the Court **DENIES** Plaintiffs' Motion to Revoke the Settlement Agreement. (Doc. 19). Instead, the Court uses its inherent authority to enforce the mediated settlement agreement signed on December 18, 2013. Hensley v. Alcon Labs., 277 F.3d 535, 540 (4th Cir. 2002).

Finally, as the parties presented no factual disputes of consequence relating to the agreement, the Court **DENIES** Defendants' Motion for an oral hearing in Response to Plaintiffs' Motion to Revoke the Settlement. (Doc. 21).

### B. Plaintiffs' Motion to Amend Complaint

On October 15, 2013, Plaintiffs moved to amend their complaint. After a responsive pleading has been filed, a party may amend its complaint only by leave of court. See FED.R.CIV.P.15(a). Rule 15 states that, after twenty-one (21) days following service of process, leave to amend "shall be freely given when justice so requires." Id.;

see Foman v. Davis, 371 U.S. 178, 182 (1962). Under Rule 15, a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison Rug Corporation v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (citing HOMF Corp. v. Allen, 238 F.3d 273, 276-77 (4th Cir. 2001). However, "the grant or denial of an opportunity to amend is within the discretion of the District Court." Pittston Co. v. U.S., 199 F.3d 694, 705 (4th Cir. 1999) (quoting Foman, 371 U.S. at 182).

In this case, the Court finds that, having recognized a valid settlement agreement between the parties that covers the full extent of the claims between Plaintiffs and Defendants, it **DENIES** Plaintiff's motion to Amend. Courts may deny leave to amend on the grounds of futility when the proposed amendment is clearly insufficient or frivolous on its face. Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

Notwithstanding allegations of a connection between Defendants and the proposed added defendants, Bank of America, Safeguard, and Town Realty, the nature of the claims against the proposed Defendants was not clear to the Court on its own terms. Additionally, the connection between the proposed Defendants and QBE insurance was not clear. Finally, the relation between the proposed parties and the insurance claims at issue was likewise not readily apparent to the Court. Having engaged in an extensive review of the Proposed Amended Complaint, the Court does not believe that it states a claim for relief sufficient to withstand scrutiny under Rule 12(b)(6). Accordingly, the Court denies without prejudice Plaintiffs' Motion to Amend Complaint.

Finally, the Court **DENIES** Plaintiffs Motion to Preserve Evidence (Doc. 9). The

grounds for this motion were not evident to the Court; likewise unclear was the nature of redress the Court could provide or the legal basis for doing so. The Court finds the Motion without merit and denies it accordingly.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiffs' Motion to Revoke the Mediated Settlement Agreement, (Doc. 19), is **DENIED**;

2. Defendant's Motion for Hearing in Opposition, (Doc. 21), is **DENIED**;

3. Plaintiffs' Motion to Amend Complaint (Doc. 8) is **DENIED**; and,

4. Plaintiffs' Motion to Preserve Evidence (Doc. 9) is **DENIED.**

5. The Court recognizes and enforces the terms agreed to by the parties on December 18, 2013.

6. The parties are to act in good faith, perform all obligations under the agreement, and file a notice of complete settlement with this Court within thirty (30) days of publication of this order or risk dismissal of this case.

Signed: 3/4/2014

Robert J. Conrad, Jr.
United States District Judge